[No. 12592.   In Bank. — March 14, 1889.]

# SAMUEL B. BAILEY, Respondent, *v.* JOHN FOX, Appellant.

Fraud — Rescission of Contract — Laches — Waiver — Partnership. — A party who seeks to avoid a contract for fraud must rescind the same promptly after the fraud is discovered, or he will be deemed to have waived it. A delay of four months after the discovery of fraud in a partnership contract, during which business is carried on as usual under the contract, is fatal to a claim of right to rescind the contract for the fraud.

Id. — Tender as a Condition of Rescission — Damages. — There must be a tender back of the identical thing purchased as a condition of rescinding the contract of sale upon the ground of fraud. If the party complaining has parted with the thing purchased so that he cannot make such tender, he cannot rescind, but must resort to an action for damages. It is not sufficient to tender the proceeds of the sale of the thing purchased.

Id. — Placing in Statu Quo. — If it becomes impossible to place the parties *in statu quo*, there can be no rescission of a contract.

Id. — Partnership Contract — Fraudulent Representations — Damages — Pleading. — In order to entitle a party to rescind a contract for fraud, he must show that some damage has resulted to him therefrom. In an action to rescind a partnership contract for fraudulent representations as to previous profits of the business, it is necessary to allege that plaintiff was induced thereby to pay more for the goods than he would otherwise have done, or that the business was not profitable after the purchase, or to show that plaintiff was in some way injured by the representations.

Appeal from a judgment of the Superior Court of Stanislaus County, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Schell & Bond,* and *W. E. Turner,* for Appellant.

The decree operates as a despoliation of the defendant's property for the benefit of plaintiff. As the plaintiff cannot rescind, his relief must be confined to redress by way of damages. (*Sinclair* v. *Neil,* 1 Hun, 85; *Hogan* v. *Meyer,* 5 Hill, 391; Benjamin on Sales, secs. 415, 452, note *d.*) No damage sustained was either pleaded or proven. This was fatal to plaintiff's right of recovery. (Kerr on Fraud, 49; 3 Wait's Actions and Defenses, 442; *Morrison* v. *Lods,* 39 Cal. 385; *Purdy* v. *Bullard,* 41 Cal. 447; Story's Eq. Jur., sec. 203; 2 Parsons on Contracts, 268.) Restitution must be made so as to place the parties *in statu quo* as an indispensable condition of rescission; and if that is impossible, there can be no rescission. (Civ. Code, sec. 1691; Fry on Specific Performance, 3d ed., secs. 703–712, 1029; Benjamin on Sales, secs. 415, 452, note *d; Pullman* v. *Alley,* 53 N. Y. 638; *Gould* v. *Cayuga County National Bank,* 86 N. Y. 79; *Thayer* v. *Turner,* 8 Met. 552; *Ross* v. *Titterton,* 6 Hun, 280, 283.) Rescission must be prompt, and the right is lost by unreasonable delay. (*Fratt* v. *Fiske,* 17 Cal. 380; *Barfield* v. *Price,* 40 Cal. 535; *Getty* v. *Devlin,* 54 N. Y. 415; *Upton* v. *Tribilcock,* 91 U. S. 45; *Morrison* v. *Lods,* 39 Cal. 381; *Herman* v. *Haffenegger,* 54 Cal. 161; *Collins* v. *Townsend,* 58 Cal. 608; *Bohall* v. *Diller,* 41 Cal. 532; *Ross* v. *Titterton,* 6 Hun, 282, 283.) Where a party has been defrauded in a contract, he may waive the fraud and adopt the contract. He may do so by positive act, or his conduct may show that he acquiesces. (*Vernol* v. *Vernol,* 63 N. Y. 45; *Atwood* v. *Small,* 6 Clark & F. 432; *MacBride* v. *Weeks,* 22 Beav. 533; *Doughty* v. *Doughty,* 7 N. J. Eq. 227; *Moffat* v. *Winslow,* 7 Paige, 124; *Crawley* v. *Timberlake,* 2 Ired. Eq. 450; *Cobb* v. *Hatfield,* 46 N. Y. 536; *Sinclair* v. *Neil,* 1 Hun, 82.) If the plaintiff retains his interest and deals with the property after full knowledge of the fraud, he loses his right of rescission. (*Grannis* v. *Hooker,* 31 Wis. 476; *Matteawan*

*Co.* v. *Bentley*, 13 Barb. 644; Waterman on Specific Performance, 496; *Foley* v. *Crow*, 37 Md. 51; *Treacy* v. *Hecker*, 51 How. Pr. 69; 1 Wharton on Contracts, sec. 286; Kerr on Fraud, 328.)

*Hatton & Fulkerth*, and *W. L. Dudley*, for Respondent.

Damages are presumed from the breach of the duty which the law imposed on the defendant, to make no false statements in respect to the property or business sold by him. (Civ. Code, sec. 3360.) For refusal to restore the money and notes fraudulently obtained, after demand, the detriment is presumed to be the value of the property. (Civ. Code, sec. 3336.) Interest may be allowed in cases of fraud by way of damages. (Civ. Code, sec. 3288.) Damage sustained is not made by the code a condition precedent to the right and remedy of rescission. (Civ. Code, secs. 20, 1689–1691, 3406–3408.)

WORKS, J.—On the fourth day of November, 1885, the appellant, being the owner of a stock of hardware and agricultural implements, sold a one-third interest therein to the respondent. The terms of sale were, that an inventory of the stock should be taken and completed on or before November 30, 1885, the same to be valued at net San Francisco wholesale prices, and when the value was thus ascertained, the value of the fixtures should be added, and the respondent should then pay the one third of the amount thereof as follows: Fifteen hundred dollars in cash, and the balance in two secured notes of equal amounts, payable January 1, 1887, and January 1, 1888, respectively. The sale was consummated in accordance with this agreement on the 30th of November, 1885. At the same time the appellant sold a like interest in the stock to one Meinecke on the same terms, whereby the parties to this suit and said Meinecke each became the owner of one third interest in said stock. The inventory was taken in the presence of the respond-

ent, who assisted in taking the same. The value of the stock and fixtures was found to be $6,434.32.

It was a part of the agreement that the three owners of the stock should form a copartnership. and carry on the business, the respondent and Meinecke to take the active management of the business, and the appellant, who had no knowledge of the business, to furnish some one in his place. The copartnership was formed by a written agreement, by which it was stipulated that the same should continue for three years, the profits and losses to be equally divided, and that the stock of the copartnership should be the stock on hand, all being equal owners therein.

This action is to rescind and cancel this contract of sale. Two grounds therefor are stated in the complaint.

"1. That the defendant, on said fourth day of November, 1885, and repeatedly before and at the time of his said offer to sell said stock of goods and interest in said business to plaintiff, and for the purpose of inducing said plaintiff to buy the same, and with the intent to deceive and defraud said plaintiff, did falsely and fraudulently state and represent to said plaintiff that said business, as then and theretofore conducted by him, was and had been a profitable and paying business, and that defendant had realized up to said time of said sale a fair profit in his said business; that plaintiff had confidence in said defendant, and believing said statement and representations so made by said defendant to be true, and relying thereon, purchased said interest in said stock of goods, wares, and merchandise, with said interest in said business and fixtures, and paid him therefor said sum of $6,434.32, in cash and notes, as hereinbefore stated; that in truth and in fact, and as defendant well knew, said statements and representations were false, and said business was not then, nor as it had theretofore been conducted by him, a profitable or

paying business, and the defendant had not realized up to the date of said sale, or at any time, a fair or any profit whatever from the same.

"2. Said plaintiff further charges and avers and shows, upon and according to his information and belief, that the said defendant, with the intent to defraud this plaintiff, caused and procured a false invoice and valuation to be made of said stock of goods, and in and by which the price thereof was greatly enhanced over and above net San Francisco wholesale prices, to wit, in the sum of about three thousand five hundred dollars; all of which was and is in violation of said agreement between said plaintiff and defendant, and in fraud of said plaintiff, and by reason thereof defendant fraudulently obtained from said plaintiff the sum of about eleven hundred and seventy-five dollars."

It is further averred that when plaintiff discovered that these representations were false, and that the inventory had been falsely taken, "plaintiff informed and notified said defendant thereof, and then and there demanded of said defendant that he return to this plaintiff the sum of $1,500, being the sum or amount which he had paid to said defendant as a part of the purchase price of said stock of goods, business, and fixtures, and that he also surrender and give up to plaintiff said two promissory notes of $2,468.16 each, hereinbefore described, the plaintiff at the same time offering to return to said defendant all of his one-third interest in said stock of said goods then on hand, and to account to him in cash for the value of such part or portion as had been sold, and to restore to him in kind or value everything which he had received from said defendant under and by said contract, upon the condition that the said defendant do likewise. But said defendant refused, and still refuses, to return to said plaintiff said sum of $1,500, or any part thereof, or give up or surrender said promissory notes,

or either of them, to the great wrong and damage of said plaintiff in the sum of $6,434.32."

There is no allegation in the complaint showing, or tending to show, that the business had not been profitable under the new management, or any other facts tending to show the materiality of the representations in respect to former profits, or that any damage or injury had resulted to the plaintiff by reason thereof.

The court finds against the plaintiff as to the allegation of fraud in taking the inventory, so that he must recover, if at all, upon the ground of false representations as to former profits in conducting the business.

The court finds the making and consummation of the sale, in substance, as stated above; that the false representations were made, and believed and relied upon by the plaintiff, and that said business had not, prior to the sale, been profitable; whether it had since been profitable or not is not found.

It is further found that the plaintiff did not discover that said representations were false until June, 1886; that in the mean time the defendant had assigned the notes to a third party as collateral security; the copartnership had continued to carry on the business, had contracted an indebtedness of about six thousand dollars for other goods purchased to replenish the stock, and had sold several thousand dollars' worth of the stock, a part of which had been sold on credit; that "plaintiff is not incapable, by reason of said copartnership, or the said business or outstanding indebtedness, of restoring defendant to his former condition, or to make restoration, if the notes which the defendant holds against the plaintiff be delivered up and canceled."

The court further finds that "there was no unreasonable delay on the part of the plaintiff in bringing this action," and that he has been damaged in the sum of $6,434.32, being the amount paid and agreed to be paid by him for the stock of goods.

The conclusions of law are as follows:—

"1. That said contract was and is fraudulent and void, and that plaintiff is entitled to have it rescinded, canceled, and set aside.   And it is so ordered.

"2. That said plaintiff is entitled to have and recover of and from said defendant the sum of fifteen hundred dollars ($1,500), and legal interest thereon from November 30, 1885.   And it is so ordered.

"3. That said plaintiff is entitled to have and recover of and from said defendant the surrender of the said two promissory notes for $2,468.16, each to be canceled and destroyed.   And it is so ordered."

It will be seen that these conclusions of law are to the effect that the contract should be canceled; that plaintiff recover back his fifteen hundred dollars, with legal interest from the date of his judgment, and that the notes given by him should be surrendered to him and canceled.

This seems to us to be a cancellation of one side of the contract, leaving the other side intact.   It leaves the plaintiff with all the stock of goods purchased by him remaining unsold, and all the money realized from sales of that disposed of, and the defendant takes nothing. This is partially remedied by the decree, which, in addition to the matters provided for in these conclusions of law, decrees "that Samuel B. Bailey, plaintiff, restore to John Fox, defendant, all the right, title, and interest of said Bailey in and to all the goods, wares, and merchandise now on hand, and purchased by said Bailey from said Fox, under the contract of sale alleged and set forth in the complaint, and all the right, title, and interest of said Bailey in and to all the goods, wares, and merchandise now on hand, and received since the making of said contract of sale, in the conducting and carrying on of the hardware business, conducted and carried on by said Bailey, Fox, and one E. Meinecke, together with all the right, title, and interest of the said Bailey in and to all

indebtedness, and the evidence thereof, due or owing to said parties by or on account of the conducting or carrying on of said business."

The defendant moved for a new trial, which was denied, and he appeals.

Several questions, as to the misjoinder of parties, and rulings at the trial, are presented by the briefs, but the conclusion we have reached upon the merits renders it unnecessary to consider them.

The judgment in favor of the plaintiffs is erroneous for several reasons:—

1. The attempted rescission by him was not in time.

2. The tender made upon an offer to rescind was insufficient.

3. It appears to have been impossible, at the time of the offer to rescind, to place the defendant *in statu quo.*

4. The court having found against the plaintiff in respect to the alleged fraud in taking the inventory, the findings show no cause of action, as there is no finding showing that the representations as to the former profits of the business were material, or resulted in any injury to the plaintiff.

1. It is a well-established and just rule of equity, that a party who seeks to avoid a contract for fraud must rescind the same promptly after the fraud is discovered, or he will be deemed to have waived it. (Civ. Code, sec. 1691; *Fratt* v. *Fiske,* 17 Cal. 380; *Barfield* v. *Price,* 40 Cal. 535; *Cobb* v. *Hatfield,* 46 N. Y. 533; Benjamin on Sales, sec. 452; *Ross* v. *Titterton,* 6 Hun, 280; *Foley* v. *Crow,* 37 Md. 51.)

It is true, the court finds that the fraud was discovered in June, and that when plaintiff made the discovery he notified the defendant and demanded the rescission. The court also finds that there was no unreasonable delay in *bringing the action.* So far as the finding as to the time of discovery and offer to rescind is concerned, it has no evidence to support it. The evidence of the

plaintiff, which is undisputed, is, that he made the discovery in May. He says: "I made the discovery that the business was not paying some time in the spring or summer, and notified Fox some time in September or October. I said all along in the spring and summer time we found things were not as we liked there and were represented; it was earlier than May or June that we made the discovery,—along about in May."

The discovery being made in May, if not earlier, and the offer to rescind in September or October, there was at least four months intervening, and the plaintiff testifies that during all of that time he continued to sell the old stock of goods and purchase new stock.

It would be entirely inequitable, it seems to us, to permit a party to rescind a contract after such a delay, under the circumstances of this case.

2. The tender made was not of the goods purchased, as a great part of them had been sold. The offer was to deliver the goods on hand, and pay the amount realized from the sale of those disposed of. This was not sufficient. Upon a rescission, the defendant, before paying back the purchase-money and delivering up the notes, was entitled to receive the identical things sold. He was not bound to take the price at which they were sold. That might, so far as we know, have been less than their value. But whether it was or not, the rule is well settled, that where the party complaining has parted with the thing purchased, he cannot rescind, but must resort to an action for damages. (*Herman* v. *Haffenegger*, 54 Cal. 161; *Cobb* v. *Hatfield*, 46 N. Y. 533; Benjamin on Sales, sec. 452.)

3. Again, at the time the offer to rescind was made, it had become impossible by the act of the plaintiff himself, or jointly with the other active partner, to place the defendant *in statu quo.*

As a result of the sale, a partnership had been formed, as we have stated, and the whole of the stock had be-

come partnership property, in which Meinecke, who was not made a party to this action, had an interest. A large part of the stock had been sold, and new stock purchased on credit, for which the defendant as well as the other partners was personally liable. This being the situation of affairs, it was utterly impossible to place any of the parties *in statu quo.* It is well settled that under such circumstances there can be no rescission of the contract. (Civ. Code, sec. 1691; *Herman* v. *Haffenegger,* 54 Cal. 161; *Pullman* v. *Alley,* 35 N. Y. 637; *Gould* v. *Cayuga County National Bank,* 86 N. Y. 75; *Sinclair* v. *Neil,* 8 Hun, 80; *Hogan* v. *Meyer,* 5 Hill, 389; *Matteawan Co.* v. *Bentley,* 13 Barb. 641; Kerr on Fraud, 48, 328; Benjamin on Sales, sec. 452; Fry on Specific Performance, sec. 706; 1 Wharton on Contracts, sec. 286; *Cobb* v. *Hatfield,* 46 N. Y. 533.)

4. The complaint states no cause of action so far as it relates to fraudulent representations respecting the question of former profits of the business. It contains no allegation that the plaintiff was induced thereby to pay a higher price for the goods than he would otherwise have done, nor is it averred that the business was not profitable after the plaintiff bought into it. In other words, there is nothing in the complaint to show that the plaintiff was in any way injured by the representations, admitting them to have been false. The findings make no better case for the plaintiff than the complaint.

In order to entitle a party to rescind a contract, he must not only show the fraud, but that as a result thereof some damage has resulted to him. (*Morrison* v. *Lods,* 39 Cal. 381; *Marriner* v. *Dennison, ante,* p. 202.) For these reasons, the defendant would have been entitled to judgment in his favor on the findings in the court below, if he had asked it.

The form of judgment is objected to. We think these objections are well taken, but the view we have taken of

the merits of the case renders it unnecessary to consider them at length.

As the case has been fully tried by the court, and the facts found, a new trial would be fruitless under the law as stated above.

Therefore the judgment and order appealed from are reversed, with instructions to the court below to so modify its conclusions of law as to conform to this opinion, and render judgment thereon for the defendant.

PATERSON, J., McFARLAND, J., THORNTON, J., and SHARPSTEIN, J., concurred.