BARRETT, J.
—This is not an action for damages for deceit We agree with the respondent that the plaintiff is suing to recover “what he parted with,” upon the theory of a disaffirmance. The complaint proceeds upon that theory, in its averment that upon, learning of the fraud the plaintiff demanded back his money, and offered to surrender all his claim upon the stock. The learned judge acted upon it with regard to the rule of damages, and the jury applied it by their verdict for the amount paid, with interest. Indeed, if the action had been for damages for fraud, the recovery would necessarily have been nominal, for the reason that the plaintiff gave no proof of such damages. Upon the plaintiff’s ■ theory, therefore, he could only recover from the actual recipients of his money. lie averred that these recipients were the four defendants, but he wholly failed to establish that averment. Ho confused the two theories,—damages for deceit, and moneys had and -received under a contract rescinded for fraud. The defendant Otto was not served, and has not appeared. The complaint was dismissed as to the Eastern Plaster-Board Company. That left the defendants the American Plaster-Board Company, a California corporation, and George W. Sessions. There was a verdict against both. Thus, the jury have found that both the corporation and the individual contracted with the plaintiff; that they both sold him fifty shares of the stock of the Eastern Plaster-Board Company; both made the false representations which are set out, and both received his money. This, of course, is senseless. There was no partnership or jpint relation between the two,—the corporation and the individual. There was in fact no evidence in the case to justify the submission of Sessions’ liability at all. He did not contract personally with the plaintiff. He acted throughout as the president of the defendant corporation. He was, it is true, the *544 payee of the checks given for the price of the shares; hat he did not deposit these checks to his own credit, nor did he receive the money therefor. On the contrary, he indorsed these checks (one of them for §3,000, payable to his order as president), and turned them over to the treasurer of the Eastern Plaster-Board Company, which apparently was satisfactory to the American Company, the owner of the stock. The learned judge, in his charge, said, without exception or question from any one, that the money was paid to, or applied for the benefit, in some way, of, this American Company ; and the learned counsel for the respondent admits in his brief that the plaintiff’s money was paid and applied to the use of the American Company. At all events, these checks were received by Sessions for the American Plaster-Board Company, and as its president. They were given in payment for stock owned by this corporation, and sold by it through Sessions, as its president. And, further, Sessions also received, as part of the purchase price, the plaintiff’s note for $1,000, which he turned directly over to the American Plaster-Board Company; and that .company has held it ever since, together with the very shares in question, as collateral. It is clear that Sessions had no individual relation to this transaction, and that he was held upon some loose and inaccurate notion, coupling liability for deceit wi,th the liability which follows rescission. In other words, because of alleged misrepresentations, for which he might be liable in damages, he was held, upon rescission, to be liable for the purchase price; that is, for what his principal, and not'he, had received.
The judgment against Sessions must be reversed. That against the company should also bo reversed, for another reason. There was sufficient evidence with regard to the representations and their falsity to warrant the submission of the questions of fact upon that head to the jury. The evidence as to the plaintiff’s reliance upon the representations is, however, quite unsatisfactory. But there can be no doubt that the plaintiff failed to disaffirm the contract until long after he became fully acquainted with the facts upon which he ultimately predicated such disaffirmance. The rule is well settled that the right to disaffirm is waived when the defrauded party does any act which unequivocally treats the contract as. subsisting after the facts giving the right to rescind have come to his knowledge; as, for instance, when, after the discovery of the state of things, he takes an acti ve part in the affairs of the company. Pol. Cont. (Wald’s Notes) 537. The law requires the disaffirmance at the earliest practicable moment after the discovery of the cheat. Masson v. Bovet, 1 Denio, 69 ; Baird v. Mayor, etc., 96 N. Y. 598 ; Cobb v. Hatfield, 46 N. Y. 536. What were the facts here ? The plaintiff was the superintendent and general manager of the Eastern Plaster-Board Company. He entered into the service of this company on the 15th of September, 1890, and' he did not close the purchase of its shares until the 7th of the following November. He had the supervision of the manufacture, the ordering of and caring for material, the payment of labor, and the filling of orders. He had a foreman under him, and 125 employes. The company’s establishment covered about ten and a-half acres. *545 <o£ ground. This employment was undoubtedly one of the main inducements to the stock investment. . The plaintiff exacted from the American Plaster-Board, Company an agreement to repurchase the shares in case he should lose such employment. Later, in March, 1891, he entered into a written agreement with the Eastern Company by which he was to have one per cent, of its net profits, in addition to his regular salary of $150 per month. He continued in the employ of the company until July, 1892. He admits that he “ gradually came to the conclusion,” about a year after the agreement whereby he became superintendent, that things were not altogether as they were represented. The truth is that he became thoroughly acquainted with the condition of the company and of its affairs. He even attended the meetings of stockholders, and there made important statements. It was long after he must have acquired full knowledge as to who these stockholders "were that he made up his mind to claim a return of his money. It is clear that he took his chances throughout, and that his disaffirmance came too late.
The judgment should be reversed, and a new trial ordered as to both defendants, with costs to each appellant to abide the event.
All concur.