OPINION OF THE COURT
Charles Edward Ramos, J.
The motions pending before this court are hereby consolidated for purposes of disposition.[1]
In these consumer protection/fraud actions brought by cigarette smokers against the manufacturers of cigarettes, plaintiffs seek to certify two proposed classes: a damages class comprised of “all residents of the State of New York * * * who, on or after June 19, 1980, became or continued to be nicotine dependent”[2] and an injunctive class of persons “who have smoked cigarettes manufactured by the manufacturing defendants and who bought those cigarettes in New York.” Since the relevant facts have been set forth at length in this court’s memorandum decision dated October 28, 1997 denying *298 defendants’ motions to dismiss, what follows is a summary of the pertinent facts.
Plaintiffs allege that defendants knowingly concealed and misrepresented information about the addictive nature of nicotine, and manipulated the levels of nicotine in their cigarettes with intent to defraud cigarette smokers and purchasers, causing them to buy defendants’ cigarettes. They assert claims for fraud, fraudulent concealment, conspiracy, concerted action, aiding and abetting, and violation of General Business Law §§ 349 and 350. On behalf of all similarly situated persons, they seek to recover the return of the purchase price spent on the defendants’ cigarettes and punitive damages.
CPLR 901 (a) provides that the class action method may be used if:
“1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
“2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
“3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
“4. the representative parties will fairly and adequately protect the interests of the class; and
“5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
Whether to certify a class action is vested in the discretion of the trial court. (Askey v Occidental Chem. Corp., 102 AD2d 130 [4th Dept 1984].) The movant bears the burden of proving that all of the prerequisites of CPLR 901 (a) have been met. Generally, the prerequisites of CPLR 901 (a) are to be liberally construed, since the State’s policy favors the maintenance of class actions.[3] (Brandon v Chefetz, 106 AD2d 162, 168 [1st Dept 1985].) The court must also consider the five factors enumerated in CPLR 902, but consideration of those factors is not triggered until the prerequisites of CPLR 901 (a) have been met. (2 Weinstein-Korn-Miller, NY Civ Prac ¶ 902.06.) If there is any doubt in deciding whether or not to certify a class, the court should err in favor of allowing the class action. (Super *299 Glue Corp. v Avis Rent A Car Sys., 132 AD2d 604 [2d Dept 1987]; Brandon v Chefetz, 106 AD2d 162 [1st Dept 1985], supra.)
The number of potential class members in each of these proposed class actions will likely exceed one million. An exact number of class members need not be specified to satisfy the numerosity requirement. (Robidoux v Celani, 987 F2d 931, 935 [2d Cir 1993].) It must be shown only that joinder is impracticable based on all the circumstances surrounding a case. (Friar v Vanguard Holding Corp., 78 AD2d 83, 91 [2d Dept 1980]; Robidoux v Celani, supra, 987 F2d, at 936; Weinberg v Hertz Corp., 116 AD2d 1 [1st Dept 1986], affd 69 NY2d 979 [1987]; 2 Weinstein-Korn-Miller, NY Civ Prac 901.09.) Because here the potential claimants are dispersed throughout the State of New York, their potential recovery is small, and many are not likely to bring individual actions for nominal economic damages, joinder would be impracticable. (See, Robidoux v Celani, supra, 987 F2d, at 936.) Therefore, the numerosity requirement has been satisfied.
Much of defendants’ remaining argument in opposition to class certification centers on the lack of common predominate issues involved, since, according to them, plaintiffs and each potential class member will have to prove they suffer an actual addiction to cigarettes in order to recover the relief being sought. They further contend that many subjective factors must be considered to determine actual addiction, and for that reason, the description of the proposed classes as comprised of those addicted purportedly lacks any certainty, or an objective standard by which the members can be easily identified. Defendants further contend that to demonstrate reasonable reliance, plaintiffs’ claims will require individual proof that each member heard or read the alleged misrepresentations made by defendants, and inquiry into what each member knew about the addictive propensities of nicotine. Citing the Fifth Circuit’s opinion in Castano v American Tobacco Co. (84 F3d 734 [5th Cir 1996]), where a nationwide class of allegedly “nicotine-dependent” persons was decertified on appeal, defendants finally argue that use of the class action method to adjudicate these claims would be unmanageable, and, therefore, not the superior method.
Commonality is established, under CPLR 901 (a) (2), when the activity complained of involves one set of operative facts from which plaintiffs’ claims arise. (Green v Wolf Corp., 406 F2d 291, 299-300 [2d Cir 1968], cert denied 395 US 977 [1969]; *300 Friar v Vanguard Holding Corp., supra, 78 AD2d, at 99.) Existence of some common scheme or single plan by which the defendants have acted is enough to find that a class action is appropriate. (See, Roberts v Heim, 670 F Supp 1466 [ND Cal 1987], affd in part, revd in part sub nom. Roberts v Peat, Marwick, Mitchell & Co., 857 F2d 646 [9th Cir 1988].) “It is unnecessary that every question be common to each member of the class; all that is required is that common questions predominate over individual ones”. (Gilman v Merrill Lynch, Pierce, Fenner & Smith, 93 Misc 2d 941, 944 [Sup Ct, NY County 1978].) Generally, in deciding whether the predominance requirement has been met, the issue of liability is controlling. Individual questions of damages can be determined in subsequent proceedings. (Dura-Bilt Corp. v Chase Manhattan Corp., 89 FRD 87, 93 [SD NY 1981], citing Sargent v Genesco, Inc., 75 FRD 79 [MD Fla 1977]; Brady v LAC, Inc., 72 FRD 22 [SD NY 1976].)
In Castaño (supra), the court found that common issues did not predominate over individual issues where damages for personal injuries to smokers nationwide were being sought in one action under a host of nine different legal theories. In addition to the factual issues that may have resulted at trial, the court was concerned that the laws of all 50 States would need to be applied in deciding the merits of the case. The court reasoned that a trial would have become unmanageable, and that the class action method was not suitable to adjudicate novel claims that were based upon addiction as an injury.
Undoubtedly a claim which turns on proof of actual addiction would involve far too many subjective factors[4] and present many of the same manageability concerns cited in Castaño (supra) to warrant class action treatment. However, unlike Castaño and the other “mass tort” cases relied upon by defendants,[5] here liability will not depend on whether cigarettes cause a particular plaintiff disease or personal injury. Rather, *301 the central issue is whether plaintiffs and the class members can recoup the money they spent in a transaction that was purportedly riddled with fraudulent activities.
It is well established in New York that fraud vitiates any transaction, and a plaintiff is entitled to recover the consideration parted with in a transaction based upon fraud. (Stauss v Title Guar. & Trust Co., 284 NY 41 [1940]; Clearview Assocs. v Clearview Gardens First Corp., 8 Misc 2d 470 [1957].) Additionally, proof that defendant engaged in deceptive practices and that plaintiff has been injured by reason thereof is the kind of evidence which supports a claim for violation of General Business Law § 349. (Oswego Laborers’ Local 214 Pension Fund v Marine Midland Bank, 85 NY2d 20 [1995].) Odd as it may seem, the health consequences of smoking then become irrelevant to proving defendants’ liability. Although the addictive nature of cigarettes may be an issue in proving fraud or deceptive practices, liability will depend upon the circumstances surrounding transactions involving the sale of cigarettes. In this regard, the plaintiffs and potential class members are all commonly situated. Each purchased defendants’ cigarettes while the defendants were allegedly engaging in a pattern of fraudulent activities. Each defendant purportedly conspired to conceal the addictive nature of cigarettes, manipulated the levels of nicotine in their cigarettes, and misrepresented relevant information to the public. Exposure to the fraud and deceptive practices and purchase of defendants’ cigarettes are the common factors which define the class. The issue of actual nicotine dependence is a red herring because damages are to be measured by the cost of the cigarettes purchased, not by the harm the plaintiffs suffered from smoking.
The defendants’ assertion that the class definition is inadequate because there is no objective criteria for determining whether a class member is “addicted” is therefore misplaced. This court is not limited by plaintiffs’ requested class description. (Robidoux v Celani, supra, 987 F2d, at 937 [2d Cir 1993].) It is within the court’s discretion to redefine the class, and it may do so in a broad fashion and then permit members to exclude themselves from the class. (See, CPLR 903; 3 *302 Weinstein-Korn-Miller, NY Civ Prac ¶ 903.01.) While plaintiffs’ requested class description fails to state objective criteria by which the court and individual smokers can make a prima facie determination as to whether they are class members, common to all class members of both the damages and injunctive classes and the named plaintiffs is that they purchased and smoked defendants’ cigarettes. A class description based upon these factors eliminates any distinction between the two classes, and many of the individual issues that might otherwise exist. Thus, this court will consider certification of one class comprised of persons who purchased and smoked defendants’ cigarettes, rather than a class comprised of those who are nicotine dependent.
Plaintiffs have submitted some evidence which would support all class members’ claims that each defendant, as a member of the alleged conspiracy, adopted standard policies and procedures whereby the same fraudulent methods were used to sell cigarettes to plaintiffs and the class members. Differences in brands, design changes, and variety of tar and nicotine levels may not create individual issues at trial because defendants were allegedly aware of and manipulated the amount of nicotine that is needed in any cigarette to keep a normal smoker addicted. Any individual issues of reliance are subordinate to the common class-wide issues, because proof that defendants engaged in a coordinated scheme of fraudulent activities is sufficient at the class certification stage to raise a presumption that the common issues are predominate. (Brandon v Chefetz, 106 AD2d 162, supra; Stellema v Vantage Press, 109 AD2d 423 [1st Dept 1985].)
This court is not unmindful of the fact that the question of whether certain plaintiffs and class members may have been more knowledgeable than others about the harmful and addictive effects of cigarettes may create individual issues at trial. However, the plaintiffs’ allegations of defendants’ superior knowledge and fraudulent acts are sufficient if proven at trial to support an inference of fraud, and may shift the burden to them and away from the plaintiffs to show that no deception was practiced. (See, Matter of Gordon v Bialystoker Ctr. & Bikur Cholim, 45 NY2d 692 [1978]; Cowee v Cornell, 75 NY 91 [1878]; Parker v Parker, 66 AD2d 328 [1st Dept 1979]; First Natl. Bank v Wright, 207 App Div 521 [3d Dept 1924].) Moreover, recovery of the economic loss, if any, that resulted from fraud in the transaction is a common predominate element since it has been limited to plaintiffs’ cost for the cigarettes *303 they purchased since June 19, 1980. Additionally, proof of damages need not be mathematically exact. (Gilman v Merrill Lynch, Pierce, Fenner & Smith, 101 Misc 2d 655, 659 [Sup Ct, NY County 1979]; Tobin v Union News Co., 18 AD2d 243, 245-246 [4th Dept 1963].) Thus, this is not a basis for denying class certification on the issue of liability. (Ray v Marine Midland Grace Trust Co., 35 NY2d 147, 154 [1974]; Dura-Bilt Corp. v Chase Manhattan Corp., 89 FED 87 [SD NY 1981], supra.)
With respect to the requirements of typicality, the claims of all the named plaintiffs are identical to those of the class. The same course of conduct gives rise to their claims which are based upon the same legal theory. (See, Super Glue Corp. v Avis Rent A Car Sys., supra, 132 AD2d, at 607; see also, Friar v Vanguard Holding Corp., 78 AD2d 83, supra.) Likewise, the interests of the named plaintiffs would not be adverse to those of the class. Contrary to defendants’ allegations, certification of a class limited to “expenses only” and a subsequent decision on the merits will not likely affect separate personal injury claims. By having excluded proof of actual addiction from the class description, plaintiffs and class members may be free to pursue claims for personal injuries caused by their addiction without being barred under the doctrine of res judicata. (See, Microsoft Corp. v Manning, 914 SW2d 602, 610 [Tex 1995]; Hill v Western Elec. Co., 672 F2d 381, 387 [4th Cir 1982]; Sullivan v Chase Inv. Servs., 79 FED 246 [ND Cal 1978].)
As seen through discovery, the briefs, and motions, and the hearing before this court, there is no reason to question the competency of the plaintiffs’ attorney. Thus, the adequacy of representation requirement has been satisfied. (See, Super Glue Corp. v Avis Rent A Car Sys., supra, 132 AD2d, at 607; Sanders v Robinson Humphrey /Am. Express, 634 F Supp 1048, 1057 [ND Ga 1986].)
As to whether the class action remedy is the superior method to adjudicate these claims, upon having reviewed the guidelines of CPLE 902,[6] this court is convinced that the class action mechanism is the only means by which a claim chal *304 lenging the sales practices of defendants will ever be adjudicated. The purpose of the class action is to provide “ ‘a means of inducing socially and ethically responsible behavior on the part of large and wealthy institutions’ * * * Without the benefit of the class action, these institutions could act with impunity * * * ‘since, realistically speaking, our legal system inhibits the bringing of suits based upon small claims’ ”. (Pruitt v Rockefeller Ctr. Props., supra, 167 AD2d, at 23-24 [1st Dept 1991] [citations omitted].) That is true here, more than under any other circumstances. Because the potential individual recovery is small, the claimants are likely to have little interest in bringing individual actions, particularly since the attorney fees for each separate action would no doubt exceed the individual’s recovery. Although redress for such claims is available in Civil Court, Small Claims Part, defendants have a long-established history of engaging in litigation tactics which make claims against them extremely burdensome and expensive for the plaintiffs.
As for manageability of a trial in these cases, the complexity of the claims has been greatly reduced by limiting the scope of the class to those who have purchased and smoked cigarettes, and the fact that five separate actions have been brought provides this court with more flexibility. At this juncture, these cases could be tried separately, and if the circumstances warrant later, the cases could be divided into subclasses, decertified or the class amended should these cases become unmanageable. (Brandon v Chefetz, 106 AD2d 162 [1st Dept 1985], supra.)
Based upon the foregoing, this court finds plaintiffs have satisfied all of the prerequisites of CPLR 901 (a).
Accordingly it is ordered that each of the actions listed in the caption hereof is, from the date of this order, to be maintained as a class action under CPLR article 9 by the plaintiffs commencing each action for themselves and as representative parties for the following class: “All residents of the state of New York who, on or after June 19, 1980, have smoked cigarettes manufactured by the manufacturing defendants, and who bought those cigarettes in New York”; and it is further ordered that within 10 days of filing of this order, the plaintiffs shall *305 present a plan for giving notice to the class and proposed form of notice to the class and attached proof of claim designed to meet the requirements of CPLR 904 which shall indicate to the class members that unless they “opt out” within a fixed time their claims will be barred. Within 10 days thereafter the defendants shall file with the court and serve upon the plaintiffs their suggestions and objections, if any, to the forms of notice and proof of claim submitted; and it is further ordered that this court hereby retains jurisdiction under CPLR article 9 to correct, modify, annul, vacate, and supplement this order from time to time before the decision on the merits of the common questions as it may deem proper.

. This memorandum decision disposes of the motions for class certification pending in the following actions: Hoberman v Brown & Williamson Tobacco Corp. (index No. 110953/96 [motion sequence No. 008]); Small v Lorillard Tobacco Co. (index No. 110949/96 [motion sequence No. 005]); Frosina v Philip Morris, Inc. (index No. 110950/96 [motion sequence No. 005]); Zito v American Tobacco Co. (index No. 110952/96 [motion sequence No. 004]); Hoskins v R.J. Reynolds Tobacco Co. (index No. 110951/96 [motion sequence No. 006]).

. The plaintiffs seek to define a class member as one who is “nicotine dependent” if he/she meets one of the following criteria: (1) all New York residents who for three consecutive years usually smoke(d) 16 cigarettes or more per day, and who usually smoke(d) their first cigarette of each day within 30 minutes of awakening; or (2) all New York residents who have been diagnosed by a health care professional as nicotine dependent.

. Because CPLR article 9 is modeled on Federal Rules of Civil Procedure rule 23, New York courts have looked to interpretations of rule 23 for guidance. (Pruitt v Rockefeller Ctr. Props., 167 AD2d 14 [1st Dept 1991]; 2 Weinstein-Kom-Miller, NY Civ Prac ¶ 901.02.)

. However, compare, R.J. Reynolds Tobacco Co. v Engle (672 So 2d 39 [Fla Dist Ct App 1996], review denied 682 So 2d 1100 [Fla 1996] [where the Florida court upheld order in a products liability action certifying a class of all Florida residents who have suffered medical conditions caused by their addiction to nicotine]), and Broin v Philip Morris Cos. (641 So 2d 888 [Fla Dist Ct App 1994] [the Florida State court certified on behalf of flight attendants nationwide claiming damages for disease caused by second-hand smoke]).

. See, Arch v American Tobacco Co. (175 FRD 469 [ED Pa, June 3, 1997, Newcomer, J.] [where plaintiffs assert claims for medical monitoring, negligence and strict product liability]); Barnes v American Tobacco Co. (1997 US Dist LEXIS 16119, 1997 WL 643605 [ED Pa, Oct. 17, *301 1997, Newcomer, J.] [plaintiffs assert claims sounding in negligence, strict product liability, and intentional exposure to hazardous substances contained in cigarette]); see also, Smith v Brown & Williamson Tobacco Corp. (174 FRD 90 [WD Mo 1997]); Amchem Prods. v Windsor (521 US —, 117 S Ct 2231 [1997]); Georgine v Amchem Prods. (83 F3d 610 [3d Cir 1996] [asbestos]); In re American Med. Sys. (75 F3d 1069 [6th Cir 1996] [penile prostheses]); Matter of Rhone-Poulenc Rorer (51 F3d 1293 [7th Cir] [blood derivatives]).

. CPLR 902 provides that the factors which should be considered in determining whether to certify a class action are:
“1. The interest of members of the class in individually controlling the prosecution or defense of separate actions;
“2. The impracticability or inefficiency of prosecuting or defending separate actions;
“3. The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
*304 “4. The desirability or undesirability of concentrating the litigation of the claim in the particular forum;
“5. The difficulties likely to be encountered in the management of a class action.”